**Edison W. MILLER, Plaintiff,**

v.

**John F. LEHMAN, Jr., Secretary of the Navy, Defendant.**

Civ. A. No. 84–2417.

United States District Court, District of Columbia.

Jan. 28, 1985.

Richard L. Swick, Washington, D.C., for plaintiff.

Mitchell R. Berger, Asst. U.S. Atty., Lt. Col. Keith Sefton, USMC, Office of Judge Advocate Gen., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Edison W. Miller, a retired Marine Corps colonel who spent five years as a prisoner of war in Vietnam, was censured by former Secretary of the Navy John Warner for alleged misconduct while a prisoner. The Board for Correction of Naval Records, acting pursuant to the Military Records Correction Board Act, 10 U.S.C. § 1552, recommended expungement of the letter of censure, concluding that "traditional concepts of fair play and justice [were] violated" by the Navy's failure to let Miller defend himself before the censure was issued. Secretary Lehman rejected this recommendation. This suit challenges Secretary Lehman's decision refusing to expunge.[1] The case is before the Court on defendant's motion for affirmance and plaintiff's cross-motion for summary judgment. Both motions have been fully briefed by the parties, and there are no material facts in dispute.

### I. The Scope of Review

■ Because there is some dispute as to the proper standard of review in a case such as this, the law pertaining to review of actions concerning military records will be set out in some detail at the outset.

The Military Records Act provides in relevant part:

The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

10 U.S.C. § 1552(a). Under this act and the applicable regulations, the Board for Correction of Naval Records hears applications for correction of records and recommends action to the Secretary of the Navy. 32 C.F.R. § 723.2(b). The Secretary's decision becomes the final agency action subject to the standards of review set out in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2).[2] The Court must determine whether the Secretary's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

This standard of review is well established for actions seeking correction of military records. *See, e.g., Neal v. Secretary of the Navy,* 639 F.2d 1029, 1037 (3d Cir. 1981); *Matlovich v. Secretary of the Air Force,* 591 F.2d 852, 857 (D.C.Cir.1978); *Benvenuti v. Department of Defense,* 587 F.Supp. 348, 355 (D.D.C.1984); *cf. Secretary of the Navy v. Huff,* 444 U.S. 453, 457 n. 5, 100 S.Ct. 606, 608 n. 5, 62 L.Ed.2d 607 (1980). In particular, if the Secretary chooses to overrule the Board's recommendation, he is required both by regulation, 32 C.F.R. § 723.7, and by the principles of the APA to give a reasoned explanation for his decision. *See Matlovich v. Secretary of the Air Force,* 591 F.2d at 860.

Contrary to the misguided view of the government,[3] it is "well settled" that judi-

1. The Court has jurisdiction of this case under 28 U.S.C. § 1331. Plaintiff seeks no damages, only equitable relief.

2. The Navy is an administrative agency pursuant to 5 U.S.C. § 701. The exceptions in that section from application of the Administrative Procedure Act to certain military functions, 5 U.S.C. § 701(b)(1)(F), (G), do not apply here. *See Hertzog v. United States,* 167 Ct.Cl. 377 (1964).

3. In arguing for a much more deferential standard of judicial review, the government seriously misstates the standard of judicial review in at least two important respects. First, the government repeatedly contends the Secretary may overrule the Board as long as his decision is not "contrary to all evidence," quoting *Boyd v. United States,* 207 Ct.Cl. 1, 9 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976), or as long as "his views are based upon any 'evidence presented in the record made to the board,'" quoting *Horn v. Schlesinger,* 514 F.2d 549, 553 (8th Cir.1975). Second, the government contends that when the facts are undisputed and the Board's recommendation is based on a finding not of error but only of "injustice," the Secretary "is free to act ... without constraint from the board's views." Defendant's Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment at 4.

cial review of the Secretary's actions is in accord with the usual APA standards and cannot be so deferential as to effectively deny review. *See Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 812 (1979). A primary reason for not giving broader deference to the Secretary is that Congress, by eliminating private bills as an alternative means for correcting military records, intended "that the Secretaries have *a duty* as well as the power to afford servicemen proper relief." *Id.* at 812 (emphasis added); *Baxter v. Claytor*, 652 F.2d 181, 185 (D.C.Cir.1981), holding that the Secretary has nondiscretionary duty to act where records were based on unconstitutional military proceedings.

This case focuses, then, on whether the Secretary abused his discretion or acted arbitrarily and capriciously in rejecting the Board's recommendation. Accordingly, it is not the Court's duty to conduct a *de novo* examination of the merits of the underlying letter of censure and the plaintiff's behavior while a prisoner of war. However, a discussion of the undisputed facts concerning the investigation giving rise to the letter of censure is critical to resolution of the issues under review.

## II. Factual Background

Edison W. Miller was a lieutenant colonel in the Marine Corps and an 18-year veteran of the military when he was shot down on a combat mission over North Vietnam on Oc-

tober 13, 1967. He suffered a broken back, crushed ankle and other injuries in ejecting from his airplane. Miller was immediately captured by the North Vietnamese and was confined in various prison camps until his release along with other prisoners on February 13, 1973.

On June 25, 1973, Rear Admiral James Stockdale, the senior Naval officer POW, formally preferred charges under Article 30 of the Uniform Code of Military Justice, 10 U.S.C. § 830(a), against Miller and several other former prisoners. The charges included soliciting fellow POWs to mutiny, accepting special favors from the enemy, informing on fellow prisoners, and mutiny by refusing to obey orders of superior POWs, in violation of 10 U.S.C. §§ 881, 882, 892, 894, 904, and 905. Several of the charges were punishable by death. *See, e.g.,* 10 U.S.C. §§ 894(b), 904.

The day after the charges were filed, Miller's appointed counsel was told informally of the general purport of the charges. But Article 30 requires that an accused "be informed of the charges against him as soon as practicable." 10 U.S.C. § 830(b). The Board found that Miller never received more than a vague idea of the nature of the accusations.[4] He never received a copy of any of the formal allegations of misconduct. He never learned what acts he had allegedly committed giving rise to the charges.[5] He never

Neither of these contentions is supported by the law. As to the "any evidence" standard, the government has misrepresented the plain meaning of the cases it cites. *Boyd* set out a standard of "substantial evidence" in just those words; the decision went on to state that an action of the Secretary "contrary to all evidence" would be a clear example of an arbitrary decision. 207 Ct.Cl. at 8–9. Similarly, the language taken by the government from *Horn* refers only to a requirement that the Secretary act on evidence in the record, not outside it.

Federal courts are entitled to a higher degree of candor and professional responsibility from government counsel.

As to the second contention, the cases again do not support the government's view. While the courts of course give deference to purely policy decisions, *e.g., Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir.1974), a judgment as to what constitutes an "injustice" is not such an unfettered

inquiry, but one that is guided by traditional notions of injustice as developed, particularly in this instance, by the boards of corrections themselves, and as informed by due process notions of fundamental fairness.

4. The Board made its finding that Miller had never been notified of the charges and specifications against him based on the uncontradicted evidence before it. A memorandum from the Navy's Judge Advocate General to the Secretary of the Navy dated July 16, 1973 stated that "[a]ction to effect personal notification" to Miller of the charges was taken on June 26, 1973. That was an apparent reference to the non-specific notice given to Miller's appointed attorney.

5. According to the Board, Miller did not receive access to the specifications of the charges against him until 1980, many years into the Board's review of the prior proceedings.

learned the names of witnesses against him.

At the time the charges were filed, the Naval Investigative Service had already conducted an investigation of Stockdale's charges at his request, and its report was forwarded with the charges to then Navy Secretary Warner. Miller subsequently asked to be interviewed by the Investigative Service but was refused. His counsel was denied access to the Service's report.

At the request of Secretary Warner, the Navy Judge Advocate General's office reviewed the charges in light of the preliminary evidence and policy considerations. The Judge Advocate General, Rear Admiral Merlin H. Staring, concluded that prosecution of many of the charges was precluded by the Secretary of Defense's policy, announced shortly after the POWs' return, of not prosecuting any returned POW based solely on propaganda statements made while in prison. However, Staring concluded that the remaining charges were substantial, and he recommended that Secretary Warner, pursuant to his authority to convene a general court-martial under 10 U.S.C. § 822, should order a formal pre-trial investigation under Article 32 of the Code, 10 U.S.C. § 832.

Article 32 investigations provide substantial procedural rights to the accused, including the rights to notice of the charges, to counsel, to cross-examine witnesses and to present evidence in his own behalf. 10 U.S.C. § 832(b).

Staring's report was sent at his recommendation to the Marine Corps Commandant, Gen. R.E. Cushman, Jr. In a memorandum to Secretary Warner dated July 21, 1973, Cushman recommended that the charges be dismissed. He wrote in part:

While I decry the conduct of Lieutenant Colonel Miller while in captivity, and believe his actions cast a pall of dishonor on the Corps, and in particular on the honor of its officers, I cannot logically distinguish his misconduct from that of others whose actions have already been 'forgiven.' In particular, I note that no sound evidence has been developed which indicates that the actions of Lieutenant Colonel Miller directly resulted in serious injury or harm to another POW.

Administrative Record at 169.[6]

Ten days later, on July 31, 1973, Miller's lawyers met with Secretary Warner and his staff. Miller's lawyers provided names of potential witnesses favorable to Miller. They were again refused information concerning the specifics of the charges. Subsequent to that, several more requests for access to investigative reports and names of adverse witnesses were refused.

In his July 16 memorandum, Judge Advocate General Staring suggested that Secretary Warner could interview potential witnesses to aid his decision about whether to proceed with a court-martial. Staring cautioned, however, that "you should avoid involving yourself so deeply in the cases [Miller's and one other] that your interest in them could be construed to be other than an official interest." That could disqualify the Secretary as an "accuser" from referring the charges to pre-trial investigation or trial. *See* 10 U.S.C. § 822(b). In apparent disregard of this advice, Secretary Warner subsequently conducted personal interviews with 19 former POWs. However, he rebuffed Miller's requests to be interviewed. Nor was Miller interviewed by anyone on the Secretary's staff. Miller was not present at any of the interviews of other former POWs.

On September 27, 1973, Secretary Warner *publicly* announced his decision in the case at a convention of the Naval Reserve Association in San Diego. The Pentagon issued a news release the same day, and the story was carried on network news

---

**6.** Government counsel seriously misled the Court in connection with the above statement. In their brief, counsel quoted only from the words "I decry" to "honor of its officers" and represented that partial quotation as a complete sentence without ellipsis, thus completely altering its intended meaning. Defendant's Memorandum in Support of Judgment of Affirmance at 4. The standards of ethical advocacy demand more, particularly from lawyers representing the United States of America.

broadcasts and in newspapers across the country. Miller learned of the action through these news accounts. Several weeks later he received the official notice of Secretary Warner's action in the form of a letter from Secretary Warner styled "Administrative Letter of Censure."

After recounting the Department's and his own investigation of the case, Secretary Warner wrote:

> I have reached the judgment that your conduct during certain of the periods when you were a prisoner of war in North Vietnam failed to meet those high standards which are required of an officer in the Armed Forces of the United States. You placed your personal comfort and welfare above that of your fellow prisoners of war. But of greater seriousness, your conduct, at times and for extended periods, was severely detrimental to both the welfare and the morale of your fellow prisoners, many of whom had been in captivity with you for a number of years.

> Based upon the foregoing, and pursuant to section 0102b of the Manual of the Judge Advocate General, you are hereby administratively censured.

The letter went on to recount why Secretary Warner had decided to take no other action against Miller:

> Although the charges preferred against you do warrant the convening of a pretrial investigation under Article 32, Uniform Code of Military Justice, and thereafter possible trial by general court-martial, I have decided to dismiss those charges. I feel that further proceedings, with their attendant publicity, would subject many former prisoners of war and their families, as well as your own family, to additional serious disruption and hardship disproportionate to any national interest which could conceivably be served thereby. I make this decision with a view to the best interests of the United States Naval Service and the community of returned prisoners of war and their families.

At his news conference in San Diego, Secretary Warner elaborated on these reasons. He said he had concluded before the investigation that further imprisonment was unwarranted considering Miller's five years in a Vietnamese prison camp. Other outcomes of a court-martial such as loss of retirement benefits would be unfair to Miller's family, he said. "So administratively I could achieve the same thing as the courts-martial and I thereby removed the inconvenience to perhaps 100 or more from being brought back from all corners of the United States to participate in a long trial," he said. Administrative Record at 40.

Upon the formal dismissal of the charges, Miller received a promotion to colonel that had been delayed during the investigation. He also received an immediate disability retirement. The disability was based on the permanent injuries he suffered upon capture in 1967.

On December 6, 1973, Miller filed a statement in reply to the letter of censure. Section 0102b of the Manual of the Judge Advocate General provided for such replies. By separate letter, Miller at the same time asked that the censure be canceled. In September 1974, Miller filed a petition asking the Board for Correction of Naval Records to cancel or expunge the letter of censure.

### III. *Subsequent Proceedings*

The Board's consideration of Miller's case extended from 1974 to 1981. In that time, the Board solicited and received advice of the Judge Advocate General relating to the legal aspects of Miller's petition, and reviewed the summary of the Naval Investigation Service's investigation. Miller testified before the Board in May 1977 and January 1980. These appearances were his first opportunity to respond to the charges besides his reply to the letter of censure. It was not until around the time of the second hearing that he became aware of the specific nature of the accusations.

On February 21, 1981, the Board voted unanimously to recommend expungement of the letter of censure. In a detailed

report to the Secretary, the Board recounted the history of the case as summarized above, emphasizing the lack of notice to Miller of the nature of the charges and the failure to provide him an opportunity to defend himself before the censure was published. The Board concluded:

> In view of the foregoing the Board finds that Petitioner [Miller] has been deprived of the fundamental fairness traditionally accorded a member of the Naval Service.... It should be expressed that the findings of the Board in this regard are specifically directed to the procedures used to censure Petitioner. While such procedures may well be legally unobjectionable, the entire atmosphere in which they were conducted was such as to deprive Petitioner of an opportunity to be heard by the official who issued the censure. It has long been the policy of the Naval Service that discipline will be administered with a view toward evenhandness. Contrary to this well established policy, Petitioner was not afforded the opportunity to be heard or present evidence on his own behalf. The Board concludes that under the circumstances of this case traditional concepts of fair play and justice have been violated. What Petitioner did or did not do in confinement is immaterial to the resolution of the issue, and the Board specifically declines to make findings as to whether or not Petitioner engaged in misconduct while a prisoner of war. To have undertaken to censure Petitioner, even privately, without according him the minimal courtesy of an interview is repugnant to basic principles of fairness....
>
> In view of the foregoing the Board finds that Petitioner has suffered an injustice. The Board's findings in this regard are based upon the failure of the naval service to afford Petitioner the opportunity to explain his situation prior to the issuance of the letter of censure. In this regard the Board particularly notes that Petitioner was not interviewed by the Naval Investigative Service; not furnished a copy of any formal allegations of misconduct; and not tendered the

statements considered by the Secretary of the Navy in reaching the decision to censure him. These factors coupled with the recommendation by the Commandant of the Marine Corps to dismiss such charges as were contemplated lead the Board to the conclusion that relief in the form of expung[e]ment of the censure is warranted.

Administrative Record at 6–7.

More than a year later, Secretary Lehman issued his decision, acting through the Assistant Secretary of the Navy for Manpower and Reserve Affairs. His statement is set out in full:

> The Board's report in this case has been carefully reviewed. It does not contain sufficient evidence to support the Board's conclusion that the petitioner has suffered an injustice. The procedures used by the Secretary in administratively censuring the petitioner have not been shown to be incorrect nor has evidence been made a matter of record which would refute the Secretary's long recognized authority to so act. Further, the record does not reflect that such action by the Secretary should have been governed by the Uniform Code of Military Justice (UCMJ) Art. 15, or that the petitioner was deprived of due process to the extent that corrective action is warranted. Accordingly, the Board's recommendation for corrective action in this case is hereby disapproved.

A.R. at 8. Shortly thereafter, Miller was notified that the Secretary's decision constituted a final adjudication of his petition under 10 U.S.C. § 1552. This lawsuit followed.

## IV. Analysis

After carefully examining the record of this case, with particular attention to the Board's report and the Secretary's final decision, the Court has concluded, for reasons set out below, that Secretary Lehman abused his discretion and acted arbitrarily in rejecting the Board's recommendation.

The statutory mandate of both the Board and the Secretary is two-fold: to correct

errors and to remove injustices. 10 U.S.C. § 1552(a).

The two things ["error" and "injustice"] are not the same. "Error" means legal or factual error.... "Injustice", when not also "error", is treatment by the military authorities, that shocks the sense of justice, but is not technically illegal.

*Reale v. United States,* 208 Ct.Cl. 1010, 1011, 529 F.2d 533, *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976). These two prongs will be considered in turn.

### A. Injustice

The Board expressly left to one side the question of legal error in the procedures used to censure Miller, basing its recommendation on a finding of injustice.

This is manifestly a case that "shocks the sense of justice," whatever the technical legalities may have been. No legal training is required to know that in a society that enshrines fundamental fairness as one of the highest public values, what happened to Colonel Miller was wrong. A military officer with a long and honorable career may not be publicly condemned by the highest commander of his service for serious dereliction of duty without an opportunity to know the accusations against him and to defend himself.

Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed.2d 865 (1950) (Jackson, J.).[7] Secretary Warner's announced purpose to accomplish the same result as court-martial without applying procedures of rudimentary fairness makes the action especially unfair.

■ Whether Miller suffered a technical violation of due process rights will be considered below in the analysis of legal error.[8] It bears emphasizing that at this point of the analysis, the Due Process Clause per se is not at issue; what is at issue is whether the values that underlie due process were properly invoked by the Board in finding that an injustice had occurred, and whether Secretary Lehman can lightly cast aside that finding of injustice.

■ The Secretary's discretion in overruling the Board is limited. The Secretary "may not arbitrarily overrule the recommendations of the Board where its findings are justified by the record." *Neal v. Secretary of the Navy,* 639 F.2d at 1043 n. 13; *accord Turner v. Callaway,* 371 F.Supp. 188, 193 (D.D.C.1974).

The Secretary's decision disputed none of the Board's careful findings of fact, which were based on uncontradicted evidence. The Secretary ruled essentially that because no legal error had been found, no injustice occurred. The Secretary may not so casually collapse together the two purposes that Congress assigned to the military records boards.[9]

7. *See also Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

The centrality of the "notice and opportunity to be heard" requirement in the context of military records corrections is well recognized. *See Neal v. Secretary of the Navy,* 639 F.2d 1029, 1043 (3d Cir.1981).

8. Reputation alone is not always a protected liberty or property interest, absent special statutory protection. *See Mosrie v. Barry,* 718 F.2d 1151, 1159 (D.C.Cir.1983); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The due process question here accordingly will require consideration of special protections the military justice system provides for reputation. *See* Part IV–B below.

9. The distinction between legal error and injustice, and the differing standards of judgment flowing from that distinction, were recognized in this case by the Judge Advocate General. The Board, composed of civilian Navy Department executive employees, sought the Judge Advocate General's advice on the Miller case, pursuant to

Traditional standards of fair play in the Navy are at the heart of the Board's decision. For the Secretary to have reached a non-arbitrary finding that no injustice occurred here, the Secretary at a minimum must have shown in his written decision that the Board was wrong in its assessment of Navy tradition. This is a heavy burden in any case, because under the statute's requirement that the Secretary act "through boards of civilians," 10 U.S.C. § 1552(a), Congress clearly contemplated that the Board would act as the Navy's institutional memory and conscience and thus would acquire expert status in assessing the contents of tradition. Traditions of fair play have never been confined to strict legality.

## B. Legal Error

Secretary Lehman's decision was arbitrary for a second, equally plain reason. The Board made clear that as a group of laymen, they were not expert on the legality or constitutionality of the procedures used to censure Miller. In finding that the procedures "may well be legally unobjectionable," the Board in essence deferred a ruling on the legal error prong of its corrections function under 10 U.S.C. § 1552 and ruled only on the injustice aspect of its mandate. The Board having done so, the Secretary was obligated to make some independent analysis of the legal error issue before concluding that no legal or constitutional error was committed. There is no evidence that the Secretary did so. Instead, the Secretary simply recited a conclusion that no error was committed. This failed to satisfy his duty to give a reasoned explanation.

■ While the Secretary has the duty to analyze issues of legal error in the first instance, *cf. Benvenuti v. Department of*

*Defense,* 587 F.Supp. 348, 355 (D.D.C.1984), such issues are questions of law subject to the court's independent determination where the Secretary has failed to issue a reasoned statement of his views. The Court has conducted such an analysis and has concluded for the reasons set out below that clear legal error was committed in the procedures used to censure plaintiff and that the Secretary's failure to recognize the error was arbitrary.

There are basically three tiers of discipline in the U.S. military justice system in increasing order of seriousness: nonpunitive measures, nonjudicial punishment, and courts-martial. Each step up the tier provides correspondingly greater procedural protections for the accused. *See generally* E. Byrne, *Military Law* 15 (3d ed. 1981).

The Uniform Code of Military Justice provides only for nonjudicial punishment, Article 15, 10 U.S.C. § 815, and various grades of courts-martial, 10 U.S.C. § 816. Congress established the system of nonjudicial punishment expressly to punish minor offenses. 10 U.S.C. § 815(b).

■ The third and lowest tier of the military justice system, nonpunitive measures, is meant for offenses considered too minor even for Article 15 nonjudicial punishment. Legal authority for nonpunitive measures—which can include written or oral reprimands, censures and the like—derives not from statute but from the inherent authority of commanding officers. *See* 28 Op.Att'y Gen. 622, 625 (1911).

This inherent authority is recognized by the Manual for Courts-Martial, which provides:

Article 15 and this chapter [setting out regulations for nonjudicial punishment under Article 15] do not apply to, include,

---

32 C.F.R. § 723.11(a). In his response, the Judge Advocate General expressly limited himself to questions of legal error and advised the Board that the issue of injustice was "solely within your jurisdiction" and that his opinion "should not be construed in any way as a reflection upon" the question of injustice. Adminis-

trative Record at 55. The Board members who decided Miller's case stressed that they were not lawyers. A.R. at 269.

The arbitrariness of the Secretary's decision is further demonstrated by his ignoring the error/injustice distinction that the chief legal officer of his department found so important.

or limit the use of those nonpunitive measures that a commanding officer or an officer in charge is authorized and expected to use to further the efficiency of his command or unit, such as administrative admonitions, reprimands, exhortations, disapprovals, criticisms, censures, reproofs, and rebukes, written or oral, *not imposed as punishment for a military offense....*

Paragraph 128c (1969 ed.) (emphasis added). The specific provision for administrative letters of censure by the Secretary of the Navy derives its authority from ¶ 128c and is found in § 0102b of the Manual of the Judge Advocate General (1970).[10] No procedural protections accompany administrative letters of censure except for a limited right of reply.

Two important limitations on the use of nonpunitive measures prevent abuse of this otherwise unfettered authority. First, as noted by the emphasis added above to ¶ 128c, nonpunitive measures are just that: not punishment; they cannot be punishments in disguise. *See* 28 Op.Att'y Gen. at 625. Merely labeling a censure as nonpunitive does not make it so; one must look to the intent of the author. Military courts have reversed impositions of nonpunitive measures where the measure was intended as punishment. *See* E. Byrne, *Military*

*Law* 733–34 (3d ed. 1981) (discussing cases).

The second limitation on nonpunitive measures is inherent in the scheme of military justice: such measures are reserved for the most minor of offenses.

Both of those limitations were violated by Secretary Warner's administrative letter of censure to Miller. By the plain language of the Secretary's letter of censure and by his statements at the news conference, the letter was intended as a substitute for a general court-martial, equal in its practical effect to any sentence that would follow a guilty verdict at a general court-martial. The deliberate publication of the letter by Pentagon press release and by personal announcement by the Secretary makes the punitive intent all the more plain.[11]

As for the second limitation, the Secretary himself concluded that Miller was guilty of capital crimes and that there was sufficient evidence to prosecute.

By violating these two limitations, Secretary Warner convicted and publicly punished Colonel Miller for serious offenses without providing the basic safeguards traditionally attached to military prosecutions for such offenses. Whatever special considerations may have affected Secretary Warner's action, he proceeded

**10.** That section provides:

In addition to the censures discussed in section 0102a, the Secretary of the Navy may, by means of a written communication, administratively censure persons in the naval service without reference to Article 15, UCMJ. Unless otherwise directed, a copy of the communication will be filed in the official record of the person censured and recorded in departmental records. The provisions of Article 15, UCMJ, chapter XXVI, MCM [Manual for Courts-Martial], and sections 0101 and 0102 of this Manual (including the right to appeal) are not applicable to administrative censure by the Secretary of the Navy. However, if the person censured is an officer and a copy of the communication is to be filed in his official record and recorded in departmental records, the officer being censured may submit such official statement as he may choose to make in reply. Any such reply shall be couched in temperate language and shall be confined to pertinent facts. Opinions shall not be ex-

pressed nor the motives of others impugned. Replies shall not contain countercharges.

Manual of the Judge Advocate General § 0102b. Section 0102a referenced by § 0102b is a provision for punitive letters of censure which are considered nonjudicial punishment and thus must follow the requirements of Article 15, including procedural protections for the accused.

**11.** That the Navy itself regards publication of a censure as punitive is clear from the Manual of the Judge Advocate General, which states at § 0102i that "'public reprimands' ... are looked upon with disfavor by the Department of the Navy" which prefers private reprimands even when the reprimand is imposed as nonjudicial punishment under Article 15. The Navy, however, does provide for routine posting of the results of nonjudicial punishment proceedings. *See Ash v. United States,* 608 F.2d 178, 179 (5th Cir.1979).

outside his authority when he issued the administrative letter of censure.

The system of military justice is replete with procedural protections for the accused in the Uniform Code of Military Justice. *See, e.g.,* 10 U.S.C. § 815(a), (e) (right to demand court-martial instead of nonjudicial punishment and right to appeal sentence under nonjudicial punishment), 10 U.S.C. § 822(b) (right not to have court-martial convened by an accuser), 10 U.S.C. § 832(b) (right to pretrial discovery of evidence against accused). These provisions provide special statutory protection for the reputational and other liberty interests of members of the armed forces. To permit a Secretary to use his administrative authority to censure in such cases would undermine due process rights [12] and would demonstrate a departure from traditional standards of fairness in the Department of the Navy.

Comprised as it was of laymen, the Board understandably did not undertake a legal analysis of the authority for the letter of censure. The fact that the Court has now done so demonstrates the soundness of the Board's non-legal conclusion that an injustice occurred here. It is equally clear that Secretary Lehman acted arbitrarily both in refusing to follow the Board's recommendation that an injustice had occurred, and also in failing to consider, as he was required to do, that legal error occurred as well and to so find.

The government's motion for affirmance is denied and the plaintiff's motion for summary judgment is granted.

It is clear from the foregoing that this record, upon which the Secretary must base his judgment, contains no ground for any decision but one to expunge. Therefore the case is remanded with direction to the Secretary to order the expungement recommended by the Board.

**12.** Since military law provides special protection for reputation through the procedural safeguards summarized above, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), would not apply. Congress, of course, also has

shown special solicitude for the reputation of members of the armed forces by establishing the procedures of 10 U.S.C. § 1552 for post-deprivation review of reputational harm.