**Edison W. MILLER**

v.

**John F. LEHMAN, Jr., Appellant.**

**No. 85–5328.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 14, 1986.
Decided Sept. 19, 1986.

E. Roy Hawkens, Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and John F. Cordes, Dept. of Justice, were on the brief, for appellant. R. Craig Lawrence and Mitchell R. Berger, Asst. U.S. Atty., also entered appearances for appellant.

Richard L. Swick for appellee. David H. Shapiro also entered an appearance for appellee.

Before EDWARDS, SCALIA, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Opinion concurring in the result filed by Circuit Judge EDWARDS.

BUCKLEY, Circuit Judge:

The government appeals a decision of the district court ordering Secretary of the Navy John Lehman to expunge a letter of censure from the service record of Edison W. Miller, a retired Marine Corps colonel, 603 F.Supp. 164. The letter was issued by one of Lehman's predecessors, John Warner, and concerned Miller's conduct while held as a prisoner of war in North Vietnam.

The court reasoned that Secretary Lehman acted arbitrarily in rejecting a finding of the Board for Correction of Naval Records ("BCNR" or "Board") that expungement was required because the procedures used to censure Miller were unjust. The court further reasoned that the Secre-

tary should have found that the censure was legally erroneous because it violated the twin limitations on secretarial censures that they be nonpunitive in nature and relate only to minor offenses.

We conclude that the district court's decision misconstrues controlling legal principles and therefore must be reversed. We nevertheless find that, because the determinations of both the Secretary and the BCNR concerned only the procedures used to censure Miller, the merits of the censure have never been reached. Accordingly, we remand this case to the district court with instructions that it be remanded to the BCNR for a determination as to whether Miller's conduct warranted censure by the Secretary of the Navy.

## I. FACTUAL BACKGROUND

Edison W. Miller was shot down while flying a combat mission over North Vietnam on October 13, 1967. He was captured by the North Vietnamese and imprisoned until February 13, 1973. Upon Miller's return to the United States, Admiral James Stockdale, the most senior naval officer imprisoned in North Vietnam, formally preferred charges against Miller and several other former prisoners concerning their conduct while in captivity. Among the charges against Miller were soliciting fellow prisoners to mutiny, refusing to obey lawful orders, accepting special favors from the enemy, and informing on fellow prisoners.

Secretary of the Navy John Warner assumed personal control of Miller's case. Warner interviewed nineteen potential witnesses (including several potential defense witnesses identified by Miller's lawyers), reviewed reports on the case by the Naval Investigative Service and the Navy Judge Advocate General, and met with Miller's lawyers. On October 27, 1973, Warner publicly announced his decision to issue an administrative letter of censure to Miller in lieu of having him tried by a court-martial. The letter of censure, a copy of which was placed in Miller's service record, stated in pertinent part:

I have reached the judgment that your conduct during certain of the periods when you were a prisoner of war in North Vietnam failed to meet those high standards which are required of an officer in the Armed Forces of the United States. You placed your personal comfort and welfare above that of your fellow prisoners of war. But of greater seriousness, your conduct, at times and for extended periods, was severely detrimental to both the welfare and morale of your fellow prisoners, many of whom had been in captivity with you for a number of years.

Based upon the foregoing, and pursuant to section 0102b of the Manual of the Judge Advocate General, you are hereby administratively censured.

Although the charges preferred against you do warrant the convening of a pretrial investigation under Article 32, Uniform Code of Military Justice, and thereafter possible trial by general court-martial, I have decided to dismiss those charges. I feel that further proceedings, with their attendant publicity, would subject many former prisoners of war and their families, as well as your own family, to additional serious disruption and hardship disproportionate to any national interest which could conceivably be served thereby. I make this decision with a view to the best interests of the United States Naval Service and the community of returned prisoners of war and their families.

Administrative Record ("A.R.") at 147–48.

At a subsequent press conference, Warner elaborated on his reasons for dismissing the charges against Miller. Among other things, he stated that "administratively I could achieve the same thing as the courts-martial and I thereby removed the inconvenience to perhaps 100 or more from being brought back from all corners of the United States to participate in a long trial." A.R. at 40.

Upon dismissal of the charges, Miller received a promotion and then retired for medical reasons, receiving full pension and

medical disability benefits. Miller also availed himself of his right under section 0102b of the *Manual of the Judge Advocate General* to have a written reply to the letter of censure included in his service record.

## II. SUBSEQUENT PROCEEDINGS

In September 1974, Miller applied to the BCNR for expungement of the letter of censure from his record. The Board's authority to recommend modifications of naval records derives from 10 U.S.C. § 1552(a) (1982), which provides in relevant part:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

This statute authorizes relief if the Secretary determines that a serviceman has suffered from either an "error" or an "injustice." *See Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 812 (1979).

Miller appeared before the Board in May 1977 and January 1980 to testify in support of his application. In October 1981 the Board unanimously recommended to the Secretary of the Navy that the letter of censure be expunged from Miller's record. This recommendation was based on the Board's conclusion that the procedures used to issue the censure constituted an "injustice" within the meaning of section 1552(a). Specifically, the Board found that Miller improperly had been denied access to the "charge sheet" setting forth the precise crimes of which he was accused and identifying potential witnesses against him. In addition, the Board found that the report of the Naval Investigative Service on Miller's case was wrongfully withheld from him, that he was not permitted to confront his accusers, and that Secretary Warner and the Naval Investigative Service both declined to interview him despite his requests for an opportunity to explain his conduct. In view of these findings, the Board concluded that Miller had been "deprived of the fundamental fairness traditionally accorded a member of the Naval Service." A.R. at 6.

The Board emphasized that its recommendation did not rest on an evaluation of the merits of Miller's censure. In its report to the Secretary, the Board stated:

> [T]he findings of the Board are specifically directed to the procedures used to censure Petitioner [Miller] .... What Petitioner did or did not do in confinement is immaterial to the resolution of the issue, and the Board specifically declines to make findings as to whether or not Petitioner engaged in misconduct while a prisoner of war.

*Id.* at 6-7. The Board also made clear that its recommendation was based solely on a finding of "injustice" under section 1552(a) and did not rest on a finding of "error" within the meaning of that section. Indeed, the Board reported to the Secretary that the procedures used to censure Miller "may well be legally unobjectionable." *Id.*

In March 1982, Assistant Secretary of the Navy John Herrington, acting on behalf of Secretary Lehman, rejected the recommendation of the BCNR. Harrington offered the following explanation of the Secretary's decision:

> The Board's report in this case has been carefully reviewed. It does not contain sufficient evidence to support the Board's conclusion that the petitioner has suffered an injustice. The procedures used by the Secretary in administratively censuring the petitioner have not been shown to be incorrect nor has evidence been made a matter of record which would refute the Secretary's long recognized authority to so act. Further, the record does not reflect that such action by the Secretary should have been governed by the Uniform Code of Military Justice ... Art. 15, or that the petitioner

was deprived of due process to the extent that corrective action is warranted. *Id.* at 8. Shortly thereafter Miller was notified that the Secretary's decision constituted a final adjudication of his application for expungement under section 1552(a). *Id.* at 1.

Miller thereupon brought an action in district court challenging the Secretary's refusal to carry out the recommendation of the BCNR. Considering the case on cross-motions for summary judgment, the district court found in favor of Miller in January 1985. The court ruled that Miller was entitled to expungement on both of the grounds for relief set forth in section 1552(a). First, the court held that the Secretary had abused his discretion in rejecting the Board's finding that Miller's treatment constituted an injustice. The court reasoned that because the Board's finding was based on a determination that the procedures used to issue the censure violated "[t]raditional standards of fair play in the Navy," the Secretary was required to accept the Board's recommendation unless he could meet the "heavy burden" of "show[ing] in his written decision that the Board was wrong in its assessment of Navy tradition." *Miller v. Lehman,* 603 F.Supp. 164, 172 (D.D.C.1985). Second, the court held that the Secretary acted arbitrarily in not considering whether issuance of the censure was "legal error." The court then undertook its own evaluation of this issue and concluded that the Secretary should have found that there was legal error. The error allegedly arose from the censure's contravention of two limitations that the district court found to be applicable to secretarial censures: (1) that such censures not be "punishments in disguise," and (2) that they be "reserved for the most minor of offenses." *Id.* at 173.

The government appeals from this decision.

## III. ANALYSIS

For the reasons stated below, we disagree with the district court's conclusion that the Secretary was required to find that Miller's censure was both unjust and legally erroneous under section 1552(a). Nevertheless, because neither the Secretary nor the BCNR has considered whether Miller's conduct warranted censure, we remand the case with instructions that the Board make a merits determination on Miller's application for expungement.

### A. *Injustice*

Both parties to this appeal agree that the Secretary's denial of an application for correction of naval records is a final agency action subject to review under the standards of the Administrative Procedure Act. *See Neal v. Secretary of the Navy,* 639 F.2d 1029, 1037 (3d Cir.1981). Accordingly, both parties have focused on whether his decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and whether it was supported by "substantial evidence." 5 U.S.C. § 706(2)(A), (E). This in turn has led the parties to attempt to show that the factual findings underlying the Board's conclusion that Miller was treated unjustly either were or were not supported by the Administrative Record. To this end, the parties point to conflicting indications in the record regarding whether Miller was notified of the charges against him and whether he was afforded an opportunity to respond to the charges.

We think these efforts are misplaced, for we do not read the Secretary's decision as a rejection of the Board's findings that Miller had neither notice of the charges against him nor an opportunity to respond to the charges. Rather, we read the Secretary's decision as finding that Miller was afforded all of the procedural due process to which he was entitled. Thus, we believe that the disagreement between the Secretary and the Board concerns not how Miller was treated, but rather whether the treatment he received violated naval tradition.

■ Neither the Board nor the Secretary cites any authority in support of their conclusions regarding naval tradition. We recognize that there are a number of cases suggesting that findings of the Board are

entitled to deference by the Secretary because of section 1552(a)'s mandate that the Secretary "act[ ] through boards of civilians" when correcting military records. *See, e.g., Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416, 421–22 (1969); *Proper v. United States,* 154 F.Supp. 317, 325–26 (Ct. Cl.1957). *Accord Neal v. Secretary of the Navy,* 639 F.2d at 1043 n. 13. In the instant case, however, we conclude that the Secretary did not abuse his discretion in rejecting the Board's finding that the procedures used to censure Miller violated naval tradition.

■ It must be emphasized that the Secretary is by no means a cipher in the process of correcting naval records. Though section 1552(a) directs the Secretary to act through a civilian board, it leaves no doubt that the final decision is to be made by him: "The Secretary of a military department ... *may* correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice." 10 U.S.C. § 1552(a) (emphasis added). *See also* 32 C.F.R. § 723.7 (1985) (recommendations of the BCNR "will be forwarded to the Secretary of the Navy who will direct such action in each case as he determines to be appropriate ...". Moreover, members of the Board are appointed by the Secretary and serve at his pleasure. *See id.* § 723.2(a). We therefore cannot agree with the district court's apparent conclusion that findings of the Board are binding on the Secretary unless shown to be unsupported by substantial evidence. We conclude instead that the substantial evidence standard applies only to judicial review of final agency actions, *see* 5 U.S.C. § 704, which in the context of applications for correction of military records means review of decisions by the Secretary. *See* 10 U.S.C. § 1552(a).

In this case, the failure of the Board to cite any authority in its decision leaves us with no basis upon which to conclude that the Secretary's finding with respect to naval tradition was arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. We therefore hold that

the district court erred in reversing the Secretary's determination that the procedures used to censure Miller were not unjust.

**B.** *Legal Error*

■ As an initial matter, we disagree with the district court's ruling that the Secretary failed to adequately explain his finding that Miller's censure was not legally erroneous. While the Secretary could have provided a more detailed explanation of his reasoning, we are required to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Motor Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). In addition, "if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference." *Environmental Defense Fund, Inc. v. EPA,* 465 F.2d 528, 537 (D.C. Cir.1972).

In this case, the Secretary's decision reveals a number of conclusions regarding the correctness of the procedures used to censure Miller, including: (1) the Secretary had authority to issue the censure, (2) the Secretary was not required to follow the procedures set forth in Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, relating to nonjudicial punishments, and (3) Miller was not deprived of due process to the extent that corrective action was warranted. All three of these conclusions are directly supported by a legal analysis of Miller's claims provided to the BCNR by the Navy Judge Advocate General in June 1976. *See* A.R. at 55–61. Under these circumstances, we hold that the Secretary adequately considered whether there was legal error and sufficiently explained his reasons for concluding that there was not.

The district court's independent analysis of the legal error question resulted in a finding that the censure was erroneous because it violated two limitations applicable

to secretarial censures: (1) that such censures be nonpunitive in nature, and (2) that they relate only to minor offenses. The district court deemed these limitations applicable to secretarial censures based on its analysis of the military justice system. The court noted that, in increasing order of seriousness, there are three tiers of discipline in the military: nonpunitive measures, nonjudicial punishment, and courts-martial. The court reasoned that the Secretary's authority to issue censures derives from the authority of officers to use nonpunitive measures, and therefore such censures are subject to limitations governing use of nonpunitive measures, including that such measures truly be nonpunitive and that they be reserved "for the most minor of offenses." *Miller v. Lehman*, 603 F.Supp. at 173. The court ruled that Miller's censure violated the first limitation because the language of the censure and Secretary Warner's comments to the press after issuing it revealed an intent to punish Miller. The court found the second limitation violated because the underlying charges against Miller were very serious. *Id.*

■ The fundamental flaw in the district court's analysis is the assumption that the Secretary's authority to censure naval personnel is based on the provision authorizing military commanders to use nonpunitive measures, paragraph 128c of the *Manual for Courts-Martial, United States* ("MCM") (1969).[1] In fact, the authority of the Secretary to issue censures is inherent in his office. *See* 28 Op.Atty.Gen. 622, 625 (1911) ("the Secretary of the Navy may, within his discretion, when he believes it for the good of the service, send communications to subordinate officers which may be in the nature of a reprimand. This right is necessarily vested in him as chief officer of that department...."). This authority has been recognized since the earliest days of the Republic, *see, e.g.,* 22 Cong.Rec. 2468–69, 2471–72 (1891) (citing instances of secretarial reprimands between 1799 and 1890), and is an essential instrument for maintaining discipline and protecting the integrity of the service.

The unique nature of secretarial censure is confirmed by the special provision for such censure in the *Manual of the Judge Advocate General* ("MJAG") (1970). Unlike all other forms of censure, which are discussed in section 0102a of the MJAG, secretarial censure is treated in section 0102b.[2] Significantly, section 0102b makes

1. The MCM is a compilation of Defense Department regulations issued pursuant to the Uniform Code of Military Justice ("UCMJ"). Paragraph 128 c of the MCM provides as follows:

   **c. Nonpunitive measures.** Article 15 [of the UCMJ, governing nonjudicial punishment] and this chapter [XXVI, concerning nonjudicial punishment] do not apply to, include, or limit the use of those nonpunitive measures that a commanding officer or an officer in charge is authorized and expected to use to further the efficiency of his command or unit, such as administrative admonitions, reprimands, exhortations, disapprovals, criticisms, censures, reproofs, and rebukes, written or oral, not imposed as punishment for a military offense. These nonpunitive measures may also include, subject to any applicable regulations, administrative withholding of privileges.

2. The MJAG is a compilation of Navy Department regulations issued pursuant to the MCM and the UCMJ. Section 0102 of the MJAG provides in pertinent part as follows:

   **0102  LETTERS OF CENSURE**

   a. *General.* "Censure" is a generic term applicable to adverse reflection upon or criticism of an individual's character, conduct, performance or military appearance. Censure may be punitive or nonpunitive. Punitive censure is imposed as commanding officer's nonjudicial punishment or as the result of a sentence by court-martial. In increasing order of severity, there are two degrees of punitive censure, namely, "admonition" and "reprimand." Nonpunitive censure is provided for in paragraph 128, MCM and in section 0101c. When imposed upon officers, punitive admonition or reprimand is required to be by written communication. If imposed upon enlisted personnel, punitive admonition or reprimand may be by either oral or written communication. Copies of punitive letters of admonition or reprimand, unless withdrawn or set aside, will be filed in the official records of the individuals to whom they are addressed and recorded in departmental records. As provided in section 0101i, once a letter of admonition or reprimand has been received by the individual to whom it is addressed, it may not be increased in severity or with-

clear that, unlike most other forms of censure, secretarial censure is exempt from the provisions of Article 15 of the UCMJ, as well as the appeal provisions of the MCM.

■ It follows that the Secretary's authority to issue censures is *sui generis;* the fine analytical distinctions that are recognized with respect to other forms of military discipline have no meaning when applied to secretarial censure. Such censure is neither a "nonpunitive measure" within the meaning of paragraph 128 c of the MCM nor a punitive sanction of the type that can be imposed as nonjudicial punishment or as the judgment of a court-martial. In addition, the distinction recognized in section 0102a of the MJAG between punitive and nonpunitive censure cannot properly be applied to secretarial censure. The district court therefore erred in concluding that secretarial censure is subject to the limitations that govern nonpunitive measures imposed under paragraph 128 c of the MCM.

When we look beyond the district court's legal analysis to considerations of policy, we remain convinced that the two limitations imposed on secretarial censure by the district court are not only without support in law or tradition, but would render administrative censures meaningless as instruments of military discipline.

■ With respect to the requirement that secretarial censure be nonpunitive, we cannot accept the district court's suggestion that subjective harm to a person censured can render a secretarial censure impermissibly punitive. While a Secretary's

censure cannot "be regarded in the nature of a punishment" within the meaning of Navy regulations defining punishable offenses and assigning sanctions for those found guilty of them, 28 Op.Atty.Gen. at 625, it would be naive to believe that the Secretary of the Navy can censure a subordinate without the subordinate feeling some form of public or private embarassment. If censure did not engender feelings of humiliation and shame, it would be of no use as a disciplinary tool. Creating such feelings has been an objective of secretarial censure ever since its first recorded use in 1799, and it will undoubtedly remain an objective for so long as Congress and the President allow the Secretary to issue censures. To hold that the Secretary may not censure subordinates if a consequence would be public or private discomfort would preclude the use of secretarial censure in virtually all cases.

The district court's related suggestion that the intent of the Secretary can serve as a guide in determining when censure is impermissibly punitive suffers from the same flaw. If the Secretary were permitted to censure subordinates only when he had no punitive intent, he would never be able to issue censures, for censure is always motivated at least in part by an intent to punish. A Secretary utterly lacking such an intent and desiring only to advise subordinates that they have acted improperly would choose a less harsh means of communicating his displeasure. Because secretarial censure is an extremely useful administrative tool, we hold that the district court erred in adopting a limitation that would effectively prevent its use.

drawn to impose a more severe punishment....

 b. *Administrative letters of censure by the Secretary of the Navy.* In addition to the censures discussed in section 0102a, the Secretary of the Navy may, by means of a written communication, administratively censure persons in the naval service without reference to Article 15, UCMJ. Unless otherwise directed, a copy of the communication will be filed in the official record of the person censured and recorded in departmental records. The provisions of Article 15, UCMJ, chapter XXVI, MCM, and sections 0101 and 0102 of this

Manual (including the right of appeal) are not applicable to administrative censure by the Secretary of the Navy. However, if the person censured is an officer and a copy of the communication is to be filed in his official record and recorded in departmental records, the officer being censured may submit such official statement as he may choose to make in reply. Any such reply shall be couched in temperate language and shall be confined to pertinent facts. Opinions shall not be expressed nor the motives of others impugned. Replies shall not contain countercharges.

Similar reasoning leads us to reject the second limitation imposed by the district court. If the Secretary were permitted to censure subordinates only for "the most minor of offenses," he would never issue censures, for he must attend to far more important matters than minor infractions by naval personnel. In order for censure to be a meaningful tool in the hands of the Secretary, it must be available to him in cases important enough to command his attention. The Secretary's authority to reprimand subordinates for serious acts of misconduct has been recognized at least since 1799, *see* 22 Cong.Rec. 2468–69, 2471–72 (1891), and there is no reason why he should be stripped of that authority today.

Viewed against the record of secretarial censures over the last two centuries, it is clear that the circumstances surrounding Miller's censure are not without precedent. While we can reach no conclusions as to whether the facts of this case justified issuance of the censure, the public nature of the censure and the seriousness of the underlying charges are consistent with past practice. We accordingly hold that Miller's censure was not legally erroneous for either of the reasons advanced by the district court. Because we conclude that the district court's findings with respect to both injustice and legal error were erroneous, we reverse the court's order requiring the Secretary to expunge Miller's censure.

### C. *Merits of Miller's Application*

While we cannot concur in the reasons articulated by the district court for reversing the Secretary's decision, we nevertheless conclude that this case must be remanded to the Department of the Navy for further proceedings. Miller's application for expungement clearly sought review of both the merits of his censure and the procedures used to issue it. Nevertheless, both the Secretary and the BCNR directed their attention exclusively to matters of procedure, and neither reached the question of whether Miller's conduct while in captivity warranted a secretarial censure. Under these circumstances, the Secretary was required upon rejecting the Board's procedural findings to remand the case to the Board for adjudication of Miller's remaining claims.

Colonel Miller has waited nearly twelve years for a ruling on whether he deserved to be censured. In order to give him that ruling, we remand this case to the district court with instructions that it be remanded to the BCNR for a merits determination.

*Reversed and remanded.*

EDWARDS, Circuit Judge, concurring in the result:

I agree that this case must be returned to the BCNR for a determination on the merits of Colonel Miller's claim. Miller's application for expungement plainly asserts that the Secretary of the Navy had no legitimate basis to issue a letter of censure concerning his conduct as a prisoner of war in North Vietnam. However, in considering Miller's claims, both the BCNR and the Secretary limited their review to a determination regarding the legality of the procedures used to censure Miller. No judgment has ever been rendered on Miller's claim that he was not guilty of misconduct while a prisoner of war.

Because I cannot find that Miller was entitled to more procedural due process than that which he received, I agree that his procedural claim lacks merit. In essence, the BCNR found, and Miller now argues, that the Secretary's treatment of Miller violated "naval tradition." The Secretary disagreed, but neither the BCNR, the Secretary nor Miller has cited us to any convincing authority on the question of "naval tradition." Since we cannot hold the Secretary's position to be legally infirm merely because Miller says that it is, and because we can find nothing in the record of this case to support a claim that the Secretary's view of "naval tradition" is wrong, we cannot overturn the Secretary's decision on this point.

In my view, once we have reached this conclusion on the so-called "procedural" issue, there is nothing left for this court to consider at this juncture. Since neither the

Secretary nor the BCNR even purported to render a decision on the merits of Miller's petition to expunge the letter of censure, it is unnecessary for us to pursue the District Court's analysis of alleged "legal error." In other words, this court should not consider any arguments regarding alleged limitations on the Secretary's authority to issue letters of censure until after there has been a final judgment on Miller's claims on the merits. Accordingly, I cannot join in any of the views set forth in part III–B ("legal error") of the majority opinion.

I join only in the result requiring a remand of this case for a consideration of the merits of Colonel Miller's claims.