William G. DOYLE, Plaintiff,

v.

Gordon R. ENGLAND, Secretary of the Navy, Defendant.

No. Civ.A. 01–1099(RMU).

United States District Court, District of Columbia.

March 29, 2002.

Charles W. Gittins, Middletown, VA, for plaintiff.

Daria J. Zane, Assist. U.S. Atty., Washington, DC, for defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S MOTION FOR A STAY OF PROCEEDINGS; DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Arising out of events occurring during the Navy's 1991 Tailhook Symposium in Las Vegas, this matter comes before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment, and the plaintiff's motion to stay the proceedings or, in the alternative, for cross-motion for summary judgment. William G. Doyle ("the plaintiff") seeks judicial review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., of the Navy's final agency decision not to correct his Naval record in accordance with the findings and recommendations of the unanimous Board for Correction of Naval Records ("BCNR"). The plaintiff alleges that the Navy ("the defendant"), acting through the Assistant Secretary of the Navy, Carolyn H. Becraft ("Assistant Secretary"), arbitrarily and capriciously denied him relief by refusing to correct his Naval records. The defendant argues that the Assistant Secretary's decision was entirely reasonable. Because the Assistant Secretary properly exercised her discretion in deciding that although the Navy chose not to punish the plaintiff, it could legitimately determine that he did not deserve a promotion, the court grants the defendant's motion for summary judgment, denies the plaintiff's motion for a stay of proceedings, and denies the plaintiff's cross-motion for summary judgment.

### II. BACKGROUND

Mr. Doyle is a former Marine Corps Captain, who was assigned to Marine Fighter Photo Reconnaissance Squadron Three ("VMFP-3") from November 1986 to August 1990. See Compl. ¶ 6. VMFP-3 was known as the "Rhinos" because of the extended nose of the F-4 aircraft. See id. ¶ 7. During the 1991 Tailhook Symposium in Las Vegas, former officers assigned to VMFP-3 planned a "Rhino Hospitality Suite" in the Hilton Hotel. See id. ¶ 9.

On Saturday of the 1991 Tailhook Symposium, Mr. Doyle went to the "Rhino Suite" and stayed there for the remainder of the evening. See id. ¶ 22. He acknowledges that during the evening, he served drinks from the Rhino mural drink dispenser.[1] See id. ¶ 23; Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Statement") at 1. While Mr. Doyle served drinks from the Rhino dispenser, "several women obtained

---

1. In previous years, the "Rhino Suite" at Tailhook "featured a paper mache rhinoceros with a plastic phallus from which drinks were dispensed." Compl. ¶ 14. "The 1991 version of the Rhino drink dispenser involved a fabrication of a colorful mural of a rhinoceros with a phallus protruding from the mural from which drinks—'Rhino Spunk'—would be dispensed." Id. ¶ 16.

drinks by sucking on the rhino phallus."[2] *See* Compl. ¶ 23; Def.'s Statement at 1–2. "At some point, when women were drinking from the rhino phallus, someone threw plaintiff a pen and told him to mark on the rhino phallus 'how far the woman was able to "deep throat" the dildo.'" Compl. ¶ 25; Def.'s Statement at 2. Mr. Doyle says he "did as he was directed." *Id.* ¶ 25. He adds that he was not involved in and did not observe the "gauntlet" and "did not observe any assaults on any women" at the Tailhook Symposium. *See id.* ¶ 28.

As a result of his attendance at the 1991 Tailhook Symposium, the Navy required Mr. Doyle to travel to Marine Corps Base Quantico, Virginia for a review of his participation in the Tailhook activities by the Consolidated Disposition Authority ("CDA"),[3] then-Lieutenant General ("LTG") Charles Krulak, U.S. Marine Corps ("USMC"). *See id.* ¶ 30. As CDA, LTG Krulak reviewed the evidence concerning Mr. Doyle's attendance at the Tailhook Symposium, heard Mr. Doyle explain his participation at the Tailhook Symposium, and evaluated Mr. Doyle's credibility firsthand. *See id.* ¶ 32. Based on the hearing, LTG Krulak "concluded that the allegation [was] completely without merit and that no basis for imposing punishment under Article 15, [Uniform Code of Military Justice ('UCMJ')], exist[ed] ..." *Id.* ¶ 33. The Navy notes that Mr. Doyle "was not punished for this actions [sic] and was retained in the Marine Corps." Def.'s Statement at 2. Furthermore, LTG Krulak recommended that the Navy fully restore Mr. Doyle's promotion eligibility. *See* Compl. ¶ 34.

Several years later, the Fiscal Year ("FY") 1996 Marine Corps Major selection board considered Mr. Doyle for promotion, and the Navy placed him on the "best qualified" list for possible promotion. *See id.* ¶ 38. Unaware of his conduct at Tailhook, the board selected Mr. Doyle for promotion. *See* Def.'s Statement at 2. On September 22, 1995, the Commandant of the Marine Corps, now-General Krulak, recommended that the Secretary of the Navy advise the President of the United States to remove Mr. Doyle's name from the selection list of officers selected for promotion to the grade of Major. *See* Compl. ¶ 39; Def.'s Statement at 2. On October 10, 1995, the Secretary of the Navy made the same recommendation to the President, and the President removed the plaintiff's name from the Major USMC selection list. *See* Compl. ¶ 40; Def.'s Statement at 2. On November 5, 1995, the President approved the Secretary's recommendation and, as a result, the Navy did not promote Mr. Doyle to Major. *See* Def.'s Statement at 2 (citing Administrative Record ("AR") 5). The plaintiff resigned his commission in the regular Marine Corps, but stayed in the U.S. Marine Corps Reserve ("USMCR"). *See* Compl. ¶ 43–44; Def.'s Statement at 2.

The following year, the FY 1997 Major USMCR selection board chose Mr. Doyle for promotion to the grade of Major. *See id.* ¶ 47; Def.'s Statement at 2. The selection board had before it information indicating that the President removed Mr. Doyle's name from the previous year's selection board at the recommendation of the Secretary. *See id.* ¶ 48; Def.'s Statement at 2. Once again, the Commandant of the Marine Corps, General Krulak, recommended removal of Mr. Doyle's name from

---

2. While the plaintiff was "in close proximity to the women as they voluntarily drank from the Rhino drink dispenser," he asserts that he did not encourage the women to drink. *See* Compl. ¶ 24.

3. The Secretary of the Navy appointed the CDA to resolve all allegations of misconduct by Marine Corps personnel who attended the 1991 Tailhook Symposium. *See* Compl. ¶ 32.

the selection board report. *See id.* ¶ 49; Def.'s Statement at 2. The Secretary of the Navy concurred and forwarded to the President the recommendation that Mr. Doyle's name be removed from the FY 1997 USMCR selection board report. *See id.* ¶ 50; Def.'s Statement at 3. The President followed the Secretary's recommendation. *See id.* ¶ 51; Def.'s Statement at 3. According to Mr. Doyle, the factual basis for his removal from the 1996 Major USMC and 1997 Major USMCR reports mirrored the information used by then-LTG Krulak when he served as the CDA and factfinder for the Tailhook cases. *See id.*

Next, the defendant considered Mr. Doyle for promotion to Major via the FY 1999 Major USMCR selection board. *See id.* ¶ 53. Mr. Doyle's Naval record contained the reports of his name removal from the FY 1996 and FY 1997 selection boards and the FY 1999 board subsequently did not select him. *See id.* As a result, on June 1, 1999, Mr. Doyle was involuntarily discharged from the Marine Corps Reserve. *See id.* ¶ 54.

Meanwhile, on or about May 3, 1999, Mr. Doyle had filed an application with the BCNR:

> seeking amendment and correction of his Naval record by removal of the documentation relating to the removal from the report of the selection boards for FY 1996 and FY 1997 Major selection boards; removal of the failure of selection on the FY 1999 USMCR selection board; retroactive reinstatement to the Marine Corps Reserve; and presentation of plaintiff's record before the next Marine Corps Reserve Major selection board as an officer who had never failed selection for promotion.

*Id.* ¶ 55. As the defendant puts it, Mr. Doyle essentially argues that because the Navy never punished him for his actions in the Rhino suite during the Tailhook Sym-

posium, the Navy should not have removed him from the promotion reports and should have promoted him. *See* Def.'s Statement at 3. Mr. Doyle also claims that the Navy unfairly denied him a promotion to Major when it promoted another officer, who arranged for the hotel suite where the behavior at issue occurred, to Colonel and allowed him to retire. *See* AR 12.

On April 5, 2000, a three-member panel of the BCNR unanimously voted to grant Mr. Doyle's application for Correction of Naval Record, and recommended its decision to the Secretary of the Navy for corrective action. *See* Compl. ¶ 56. After consideration of the recommendation of the BCNR, on July 11, 2000, the Assistant Secretary rejected the BCNR's recommendation and denied Mr. Doyle relief. *See* AR 12. The Assistant Secretary noted that in Mr. Doyle's petition, he admitted that he personally engaged in the conduct that formed the basis for the Secretary's decision to recommend that the President remove Mr. Doyle from the promotion list. *See id.* The Assistant Secretary stated that:

> I do not agree that the Secretary's actions in [Mr. Doyle's] case were unfair. [Mr. Doyle] admitted to egregious behavior that clearly established his unfitness for promotion. There is no evidence that the other officer cited by the BCNR was personally engaged in the same behavior as [Mr. Doyle] or that his personal behavior during the Tailhook Symposium was otherwise comparable to [Mr. Doyle's]. Even if it were, the fact that another officer may have avoided the full measure of accountability for his behavior at Tailhook does not make it unfair or unjust for the Secretary to take entirely appropriate actions to assess accountability in this case or others.

*Id.*

On May 22, 2001, Mr. Doyle filed a complaint in this court. On July 26, 2001,

the defendant filed a motion to dismiss or, in the alternative, for summary judgment, stating that no genuine issue of material fact exists, and that the decision by the Assistant Secretary not to grant Mr. Doyle relief was not arbitrary or capricious. On September 17, 2001, Mr. Doyle filed a motion to stay proceedings pending submission of a complete administrative record for consideration by the court, and a cross-motion for summary judgment.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party

must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Scope of Review

Since this case involves a challenge to a final administrative action, the court's review is limited to the administrative record. *See Fund for Animals v. Babbitt,* 903 F.Supp. 96, 105 (D.D.C.1995) (citing *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Id.* (citing *Richards v. I.N.S.,* 554 F.2d 1173, 1177 n. 28 (D.C.Cir.1977)). Courts must review a decision regarding the correction of military records under the APA to determine if the decision was "arbitrary or capricious" or not based on substantial evidence. *See* 5 U.S.C. § 706; *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

As the Supreme Court has explained, "[t]he scope of review under the

'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In reviewing the action of an agency under 5 U.S.C. § 706(2)(A), the court must determine whether the agency has examined the relevant data and articulated a satisfactory explanation for its action. *See id.* "In thoroughly reviewing the agency's actions, the court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals,* 903 F.Supp. at 105 (citing *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). In addition, the plaintiff has the burden of showing "by cogent and clearly convincing evidence" that the decision was the result of a material legal error or injustice. *See McDougall v. Widnall,* 20 F.Supp.2d 78, 82 (D.D.C.1998) (internal citations omitted). In the absence of clear and persuasive evidence to the contrary, courts should presume that the Secretary and selection boards performed fairly and lawfully. *See Boyd v. United States,* 207 Ct.Cl. 1, 1975 WL 22807 *4 (1975).

### C. The Secretary's Actions Were Not Arbitrary or Capricious

■ In this case, the plaintiff claims that the defendant, acting through the Assistant Secretary of the Navy, acted arbitrarily and capriciously when the defendant denied the plaintiff relief based on false assertions of fact that were contrary to findings, and based on unsupported evidence. *See* Compl. ¶ 59, 61; Pl.'s Opp'n to Mot. to Dismiss & Mem. in Supp. of Pl.'s Cross–Mot. for Summ.J ("Pl.'s Opp'n") at

11–17. The court concludes that the plaintiff has failed to meet his burden of showing by cogent and clearly convincing evidence that the decision was the result of a material legal error or injustice. *See McDougall,* 20 F.Supp.2d at 82. In short, the court concludes that the Assistant Secretary acted within her scope of authority in making her decision, explained her decision, and relied on facts supported in the record.

■ The plaintiff charges that the Assistant Secretary's decision was arbitrary since it was "contrary to the evidence before the BCNR." *See* Compl. ¶ 63. This claim lacks merit. The Secretary of a military department, under procedures established by that Secretary and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when the Secretary considers it necessary to correct an error or remove injustice. *See* 10 U.S.C. ¶ 1552(a)(1); *Miller v. Lehman,* 801 F.2d 492, 496–97 (D.C.Cir.1986). The D.C. Circuit has held that although 10 U.S.C. ¶ 1552(a) directs the Secretary to act through a civilian board, "it leaves no doubt that the final decision is to be made by him." *See Miller,* 801 F.2d at 497. The statute confers a certain amount of discretion on the Secretary, including the discretion to differ with a board's recommendations where the evidence is susceptible to varying interpretations. *Boyd,* 207 Ct.Cl. 1, 1975 WL 22807 *4.

In addition, the plaintiff attacks the substance of the Assistant Secretary's decision to deny relief. *See* Pl.'s Opp'n at 13–17. The Assistant Secretary gave a reasonable explanation for her decision to reject the BCNR's recommendation. *See* AR 12. The record indicates that the Assistant

Secretary considered the entire BCNR report and record prior to making her decision. *See id.* The Assistant Secretary then offered legitimate explanations for her decision to reject the BCNR's recommendation: namely, that the plaintiff admitted to egregious behavior that "clearly established his unfitness for promotion"; that no evidence existed that the other officer cited by the BCNR was personally engaged in the same behavior as the plaintiff during the Tailhook Symposium; and that, even if the other officer's behavior had been similar to the plaintiff's, "the fact that another officer may have avoided the full measure of accountability for his behavior at Tailhook does not make it unfair or unjust for the Secretary to take entirely appropriate actions to assess accountability in this case or others." *See* AR 12. Rather than being the result of a material legal error, the court concludes that the Assistant Secretary's decision to reject the BCNR's recommendation was within her sound discretion and in keeping with the applicable standard. Indeed, the record reflects that the Assistant Secretary has examined the relevant data and has articulated a reasonable explanation for rejecting the BCNR's recommendation. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. Moreover, the record provides no evidence that the Assistant Secretary's decision was arbitrary or capricious. *See* 5 U.S.C. § 706.

Finally, the plaintiff claims that the Assistant Secretary based her decision on alleged false assertions of fact that were contrary to findings of fact made previously by then-LTG Krulak, as the CDA, regarding the investigation into the plaintiff's Tailhook activities. *See* Compl. ¶ 59. General Krulak himself, however, offers a legitimate, reasonable, and thoughtful explanation for his views:

> As the CDA, I determined that there was no violation of the UCMJ by Captain Doyle and elected not to take judicial action. I believe that action was correct. As the Commandant of the Marine Corps, I look at the totality of Captain Doyle's conduct at the 1991 Tailhook symposium through a different lens and find his conduct not representative of the high standards and moral repute the nation expects in her Marine officers. Accordingly, I cannot support his promotion to the grade of major.

AR 44. General Krulak plausibly distinguishes between punishment and promotion, and such a rationale is reasonable. *See Nation v. Dalton,* 107 F.Supp.2d 37, 47 (D.D.C.2000) (deciding whether to punish a service member for misconduct by removing her from service and deciding whether to remove her from a promotion list "present entirely distinct inquiries"). In sum, the complete record was available to the Assistant Secretary at the time of her review, including the plaintiff's arguments, the response from Marine Corps headquarters, and the Commandant's explanation, and the Assistant Secretary's decision was thoroughly justified. *See* AR 68.

The court holds that the Assistant Secretary's decision was neither arbitrary nor capricious and that the record amply supports her determination. *See* 5 U.S.C. § 706; *Marsh,* 490 U.S. at 378, 109 S.Ct. 1851. Accordingly, the court grants the defendant's motion for summary judgment, denies the plaintiff's motion to stay the proceedings pending submission of a complete administrative record, and denies the plaintiff's cross-motion for summary judgment.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment, denies the plaintiff's motion for a stay of proceedings, and denies the plaintiff's cross-motion for summary judgment. An order directing the parties in a manner

consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of March, 2002.