Michael K. CRAGER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 322–87C.

United States Claims Court.

Feb. 28, 1992.

J. Byron Holcomb, Bainbridge Island, Wash., Atty. of Record, for plaintiff.

John S. Groat, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson and Director David M. Cohen, Attys. of Record, for defendant.

## OPINION

HORN, Judge.

This military pay case is now before the court on plaintiff's Motion for Summary Judgment and defendant's Cross–Motion for Summary Judgment. Plaintiff, Michael K. Crager, was involuntarily discharged from the United States Navy, on November 12, 1985. In his complaint, plaintiff claims jurisdiction under 28 U.S.C. § 1491 (1988) and 10 U.S.C. § 1552 (1988).

Subsequent to the decision to involuntarily discharge Crager, he filed a petition before the Board for Correction of Naval Records (BCNR) seeking a correction of his naval records to reflect that he had been wrongfully discharged. Although the BCNR unanimously decided that the discharge was proper and void of all legal error, the two majority members of the BCNR recommended in favor of Crager's request to be retained in the service on equitable grounds. The findings of the BCNR were then routed to the Assistant Secretary of the Navy for Naval Manpower Reserve Affairs (Assistant Secretary Chase Untermeyer) for final review and a decision. After reviewing the BCNR recommendation, as well as a recommendation from a uniformed military officer of the Judge Advocate General Corps (JAG) of the Navy, the Assistant Secretary adopted the BCNR minority member's opinion not to retain plaintiff in the service and upheld Crager's discharge.

In the case currently before the court, plaintiff requests the court to overturn the final decision made by Assistant Secretary Untermeyer, which resulted in plaintiff's discharge. Plaintiff argues that this final decision by Assistant Secretary Untermeyer and plaintiff's discharge were improper, following the recommendation of the majority members of the BCNR to retain plaintiff.[1] Plaintiff also seeks back pay

---

1. Originally, plaintiff also brought this action seeking review of the Assistant Secretary's initial determination to discharge plaintiff pursuant to Naval Personnel Manual (NAVPERS-MAN) 3630900. However, in an earlier Order issued by this court, those claims regarding the initial decision of Assistant Secretary Untermeyer were previously ruled on and are not pertinent to the instant motions. *Crager v. United States,* 16 Cl.Ct. 269 (1989). The plaintiff had urged that the Assistant Secretary of the Navy erred in his initial exercise of power to endorse the Naval Military Personnel Command recommendation that plaintiff be discharged. In the earlier Order, pursuant to the defendant's Mo-

tion to Dismiss, this court held that the initial determination to discharge by the Assistant Secretary was inappropriate for judicial review. *Id.* at 273. Plaintiff's counsel was reminded that all claims pursuant to the Assistant Secretary's initial determination, which had already been disposed of by this court in the earlier Order, would not be a part of the consideration on the motions now before the court. Nonetheless, plaintiff's counsel has continued to include arguments in support of these claims in his papers on the instant Summary Judgment Motions.

In the earlier Order issued by this court, the court did find, however, that it has jurisdiction to review the decision of a Secretary of the

and allowances for active duty from his date of discharge on November 12, 1985 to the date of expiration of his contract of enlistment on January 12, 1989. Plaintiff further asks this court to order the Secretary of the Navy to correct his naval records. The corrections he has requested include voiding and expunging all records relating to his discharge and release from active duty, correcting his records to show retroactive restoration to active duty, and entering an appropriate notation explaining the absence of active duty service from the date of his discharge to the date of his reinstatement.

Plaintiff filed a Motion for Summary Judgment and defendant filed a Motion for Judgment on the Pleadings, or in the Alternative, Cross–Motion for Summary Judgment, in which the defendant claims that plaintiff's allegations of error lack merit and that the decision of the Secretary is entitled to deference by this court. As is discussed more fully below, and based on the submissions of both parties, the court finds that the decision of the Assistant Secretary upholding plaintiff's involuntary discharge is legal and proper, and is not an arbitrary or capricious exercise of authority. Defendant's Cross–Motion for Summary Judgment is, hereby, GRANTED and plaintiff's Motion for Summary Judgment is, therefore, DENIED.

## FACTUAL BACKGROUND

After his initial enlistment in the United States Navy on January 19, 1971, plaintiff Crager advanced to the position of SK2 (E–5) and was on active duty in the Training and Administration of Reserves Program. At the time of his involuntary discharge, plaintiff was stationed at the Naval Reserve Facility, Medford, Oregon.

Plaintiff's record was generally good,[2] prior to allegations made against plaintiff on March 7, 1984, by a female civilian employee at the Naval Station who alleged in a sworn statement to the Naval Investigation Service that plaintiff had indecently exposed himself and committed an indecent assault on her. Subsequently, two female enlisted reservists also made allegations regarding sexual misconduct by the plaintiff.

The alleged misconduct resulted in a trial by summary court-martial.[3] Plaintiff was convicted of one count of indecent exposure on October 18, 1984, and was sentenced to forfeiture of pay in the amount of $200.00. Subsequently, on January 10, 1985, plaintiff was honorably discharged, but was allowed to reenlist one day later for a four-year period.

The Naval Military Personnel Command (NMPC), upon examining the Naval Investigation Service report, directed plaintiff be discharged, based on his service record and rules and regulations which required the processing of cases involving sexual perversion. The plaintiff's Command had not advised the NMPC, and the NMPC had no knowledge that plaintiff had been allowed to reenlist since the events of his misconduct, nor of his summary court-martial conviction. An administrative discharge action was initiated on March 14, 1985. The notification to Crager, dated March 14, 1985, alleged that plaintiff was being considered for an administrative discharge by reason of misconduct, as evidenced by the Naval Investigation Service report and the summary court-martial. After examining all the evidence brought before the Naval Discharge Review Board, the Board reached a unanimous conclusion that plaintiff had committed a serious offense in his prior

---

Navy which rejected the BCNR's majority recommendation and adopted the BCNR's minority opinion.

2. During plaintiff's first enlistment in the United States Navy, between January, 1971 and January, 1977, his conduct and overall traits averages were 3.2 on a scale of 4.0. During plaintiff's second enlistment, beginning in January, 1978, plaintiff received excellent ratings until the time of the alleged misconduct.

3. Pursuant to Article 134 of the Uniform Code of Military Justice, and as documented in the opinion issued by the BCNR, Crager was tried on three counts including: (1) oral communication of indecent language to a female YN3 from February 1983 to December 1983 (2) indecent exposure while riding in a female employee's car on July 21, 1982 (3) indecent assault on a female RMSN in April, 1983.

enlistment and recommended that plaintiff be discharged.[4]

Subsequently, plaintiff alleged that his discharge was legally in error since the misconduct leading to the discharge had occurred in a prior enlistment. For this reason, plaintiff claimed that the NMPC lacked the authority to issue a notice of a separation. Although the NMPC essentially conceded that separation under Naval Personnel Manual (NAVPERSMAN) 3610200 might be improper, it then notified plaintiff, on June 20, 1985, of its intent to discharge plaintiff pursuant to NAVPERS-MAN 3630900, which permits separation "in the best interests of the Naval Service." On July 2, 1985, plaintiff was notified by letter of a proposed discharge action in the best interests of the service. On September 20, 1985, the Assistant Secretary for Naval Manpower and Reserve Affairs, Chase Untermeyer, approved the recommendation by the Chief of Naval Personnel to separate plaintiff in the best interests of the service. The plaintiff was discharged on November 12, 1985.

Plaintiff, believing the discharge process to be improperly accomplished, applied to the Board for Correction of Naval Records (BCNR) in November, 1986. The BCNR consisted of a 3–member panel. Although all three members rejected plaintiff's contention of prejudicial legal error in his case, and concluded that the Navy's reliance on a discharge in the best interests of the service was permissible and in accordance with the controlling authority, two members of the panel concluded that, on the basis of "equity and fairness," plaintiff should be allowed to continue to serve on active duty. In reaching this conclusion the majority considered several mitigating factors including: (1) the reticence of the victims in filing charges against plaintiff; (2) the nature of plaintiff's misconduct; (3) the light sentence imposed by the summary court-martial; (4) the personal problems then confronting plaintiff, which appeared to have been resolved; and (5) plaintiff's otherwise good performance in the service.

The minority member concluded, however, that separation was proper. The minority member found that the indecent exposure misconduct of which plaintiff was convicted was an offense of "moral turpitude." The minority member clearly felt that plaintiff's discharge did not constitute an injustice and that the discharge of the plaintiff in the best interests of the service was supportable. He declined to recommend that the discharge be overturned.

The findings and conclusion of all members of the BCNR were then routed to Assistant Secretary of the Navy for Manpower and Reserve Affairs, Chase Untermeyer, for a final administrative decision. Prior to making a decision, the Assistant Secretary received an additional recommendation from a uniformed JAG officer, who also advised that relief be denied to the plaintiff. Plaintiff alleges that reliance on this recommendation is in violation of 10 U.S.C. § 1552, which requires the Assistant Secretary to act through a civilian board in reaching decisions of separation. Despite the majority conclusion of the BCNR to retain plaintiff in the service on equitable grounds, and after, as he stated, "a careful review," on April 28, 1987, Assistant Secretary Untermeyer specifically adopted the position of the minority member of the BCNR and ordered that the plaintiff be discharged.[5]

---

4. Evidence included: (1) allegations which lead to plaintiff's summary court-martial and his ultimate conviction of one count of indecent exposure; (2) performance evaluations; (3) letters of appreciation and commendation; (4) letters of reference and medical data; (5) medical record dated May 17, 1984 diagnosing plaintiff as an alcoholic; (6) report by a civilian psychiatrist, dated June 7, 1984, diagnosing plaintiff as having a passive aggressive personality disorder and probably a psychosexual disorder known as paraphilia.

5. In a letter to Mr. Crager, dated May 1, 1987, which is part of the Administrative Record, W. Dean Pfeiffer, of the Department of the Navy, informed the plaintiff that: "[a]fter a review of the entire case the Under Secretary of the Navy specifically adopted the findings and conclusions of the minority member of the Board and directed that your request be denied." However, no document to this effect, signed by the Under Secretary, was included in the very disorganized and repetitive Administrative Record presented to the court.

Almost two years later, on February 9, 1989, the Assistant Secretary of the Navy for Manpower and Reserve Affairs issued a memorandum which indicated that the Deputy Secretary of Defense had directed a review of all cases on which the BCNR had recommended relief and the Assistant Secretary had disapproved or substantially modified the decision, and in which the decision maker had been advised by a uniformed officer. Therefore, on March 9, 1989, the Navy wrote to plaintiff informing him that in cases, such as his, in which an Assistant Secretary had overturned or substantially modified a BCNR recommendation, and in which the decision maker had received input from an active duty military lawyer/officer, the case would again be reviewed by a designee of the Secretary who had no prior involvement in the case. Subsequently, on March 9, 1989, plaintiff was informed that Assistant Secretary for Manpower and Reserve Affairs, Kenneth D. Bergquist, who had no prior involvement in the case, had reviewed the present action anew. Assistant Secretary Bergquist found plaintiff's discharge both in accordance with law and proper, and once again upheld the discharge.

## DISCUSSION

The remaining issues in the instant action concern two areas of inquiry. First, this court must review and determine the extent of the Secretary's exercise of discretion pursuant to 10 U.S.C. § 1552, 32 C.F.R. § 723.7 (1991), and NAVPERSMAN 3630900. Second, the court must examine the possible impact of alleged procedural errors in the process which led to the refusal by the defendant to void Crager's discharge.

The present controversy is presented to the court on cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Claims Court (RUSCC). RUSCC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language.[6]

Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RUSCC 56(c) and Fed.R.Civ.P. 56(c). RUSCC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Ass'n. Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991).

When making a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd without op.*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a sufficient disagreement to require submission to fact finding or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied.

---

**6.** Since RUSCC 56(c) is closely patterned upon Fed.R.Civ.P. 56(c), precedent under the Fed. R.Civ.P. is relevant to interpreting RUSCC 56(c). *See Imperial Van Lines Int'l, Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Litton Indus. Products, Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

▪ In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court added an additional provision to the long standing summary judgment guidelines, outlined above, when it indicated that the initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can show, alternatively, that there is an absence of evidence to support the nonmoving party's case. *Id.*, 477 U.S. at 325, 106 S.Ct. at 2553; *see also Lima Surgical Assoc.*, 20 Cl.Ct. at 679. If the moving party makes this showing, the burden is then on the nonmoving party to present evidence in support of its case and show that a genuine factual dispute exists by making a showing sufficient to establish the existence of an element of its case upon which it bears the burden of proof. *Lima Surgical Assoc.*, 20 Cl.Ct. at 679. The logic behind this addition is simple. If under no scenario can the nonmoving party present the necessary evidence to support its case, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In the instant case, in which the plaintiff claims he was wrongfully discharged, the court is presented with record review of the events leading up to, and including, the BCNR review, and also with review of certain events following issuance of the BCNR decision, including review by two Assistant Secretaries. Because there is no dispute as to these facts, the case is ripe for summary judgment.

At issue is the propriety of plaintiff's discharge pursuant to NAVPERSMAN 3630900. NAVPERSMAN 3630900 states in pertinent part:

Regardless of any limitations on separation provided by this manual, the Secretary of the Navy may direct the separation of any member prior to expiration of that member's term of service after determining it to be in the best interests of the naval service. This reason shall not be used if any other reason or reasons would be appropriate.

NAVPERSMAN 3630900(1) (October 1982).

Plaintiff alleges that his separation from the Navy pursuant to this regulation should be found void due to the commission by the Navy of procedural errors leading up to his separation. Moreover, plaintiff also contends that the determinations made by the Navy were arbitrary, capricious, and contrary to law. With respect to a review of the exercise of the Secretary's discretion by the two Assistant Secretaries, Untermeyer and Bergquist, the defendant claims that this court may review the exercise of such discretion solely for evidence of colorable constitutional violations.

The statutory authority from which the Secretary of the Navy's authority derives is 10 U.S.C. § 1552, which provides that:

The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

10 U.S.C. § 1552(a) (1988).

Further, the relevant portion of the Navy's regulation, 32 C.F.R. § 723.7, states that:

The record of proceedings of the Board ... will be forwarded to the Secretary of the Navy who will direct such action in each case as he determines to be appropriate....

32 C.F.R. § 723.7

▪ 10 U.S.C. § 1552(a) should be interpreted as granting discretionary authority

to the Secretary to correct military records, assuming the Secretary follows the appropriate procedures. By specifically citing to the language in the statute that the Secretary "may correct any military record of that department when he considers it necessary," it seems clear that the legislative intent, in fact, is to award the Secretary wide discretion. In *Miller v. Lehman*, 801 F.2d 492, 497 (D.C.Cir.1986), the court further noted that "though section 1552(a) directs the Secretary to act through a civilian board, it leaves no doubt that the final decision is to be made by him." Likewise, the relevant portion of 32 C.F.R. § 723.7 quoted above uses similar language in allowing the Secretary to act as "he determines to be appropriate."

■ The scope and standard of review is set out in *Wronke v. Marsh*, which directs that in order to establish an entitlement to relief, plaintiff must demonstrate by "cogent and clearly convincing evidence" that the determinations denying relief were "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). Also, when reviewing the professional judgment of the military, trial courts are directed to, and should give deference to, the findings and conclusions of the armed services. *Wronke v. Marsh*, 787 F.2d at 1576. *See also Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980) (noting that an officer's challenge to an officer's effectiveness report (OER) "must overcome the strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith"); *Sanders v. United States*, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979) (stating that "[s]trong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters"). This court also recognizes that "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.) *cert.*

*denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (citing *Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988)).

In *Woodward v. United States*, 871 F.2d 1068 (Fed.Cir.1989), *cert. denied*, 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990), the United States Court of Appeals for the Federal Circuit set out a standard of review in military personnel actions. The court in *Woodward* stated:

> Special deference must be given by a court to the military when adjudicating matters involving their decisions on discipline, morale, composition and the like, and a court should not substitute its views for the 'considered professional judgment' of the military. *Goldman v. Weinberger*, 475 U.S. 503, 508, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986); *Rostker v. Goldberg*, 453 U.S. 57, 65–66, 101 S.Ct. 2646, 2652, 69 L.Ed.2d 478 (1981); *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). In *Beller v. Middendorf* [632 F.2d 788 (9th Cir.1980) ], Judge, now Justice, Kennedy said that 'constitutional rights must be viewed in the light of the special circumstances and needs of the armed forces.' 632 F.2d at 810.

*Id.* at 1077.

Especially when dealing with personnel matters, the judiciary should not micromanage the military services and seek to undo personnel decisions. In *Orloff v. Willoughby*, the court noted that the military is a specialized community governed by discipline separate from civilian discipline and that "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters". *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, *reh'g denied*, 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953).

There are strong policy reasons which "compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813.

Finally, the Supreme Court in *Chappell v. Wallace* reasoned that:

[t]he special relationships that define military life have 'supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.' [Citations omitted.]

462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983).

█ In the case currently before the court, the two-member BCNR majority concluded that Crager's discharge was "effected in accordance with applicable directives and was legally unobjectionable," the BCNR majority, nonetheless, concluded that Crager should be granted relief "as a matter of equity and fairness." The two majority members did not base their opinions on either factual or legal errors made by the decision makers whose acts they were reviewing. The decision by the majority represented a judgment call, based on equitable principles, with which a minority Board member and subsequently two Assistant Secretaries did not agree. Although the two members of the BCNR who comprised the Board majority agreed with plaintiff, three Secretarial officers, the minority member of the Board and two Assistant Secretaries, also charged with responsibility for personnel matters, did not. The plaintiff has failed to show by "clear and convincing evidence" that any action taken by the military was "arbitrary, capricious, or contrary to law."

Like its predecessors, this court will not intrude upon the judgment of the Department of the Navy in deciding who should or should not remain a part of that service. The BCNR fully explored plaintiff's military record, including his service record, history of alcohol abuse and claim of recovery, and his record of having been convicted of a sex crime. Although the initial conviction and fine of the plaintiff for indecent exposure and the action to discharge

him on those grounds is not at issue in this Opinion, plaintiff's past military record, including his previous conviction, however, is admissible and relevant when reviewing the entire service record of a military service person.[7]

In plaintiff's case, the evidence presented requires the decision maker to balance the available information and equities. Ultimately, however, the available evidence does support the decision to discharge plaintiff Crager in the best interests of the service as a proper exercise of the discretion of the Secretary.

█ In the instant action, defendant correctly alleges that plaintiff has failed to set forth any claim constituting a colorable constitutional violation. Crager's interest in remaining on active duty in the Naval Reserve is not a property right protected by the Constitution. *See Alberico v. United States*, 783 F.2d 1024, 1027 (Fed.Cir. 1986). Therefore, without a showing of a colorable constitutional claim, or a violation of an applicable statute or regulation, the Secretary's decision to uphold Crager's discharge and to deny the relief sought is a determination which was within his discretion to make.

█ In support of his claims to relief, plaintiff also has questioned the defendant's failure to explain adequately why his separation from the service was in the best interests of the service and cites to the defendant's alleged failure to state why no other reason for separation was appropriate. The notification procedure for separation in the best interests of the service is set forth in NAVPERSMAN 3630900:

The Notification Procedure (MILPERSMAN 3640200) shall be used. In addition the notice shall:

(1) Explain why separation of the member is in the best interests of the Naval Service; and

---

**7.** It appears that, but for the initial oversight committed by Naval personnel when it allowed Crager to reenlist following his conviction for sexual misconduct, this dispute would never have arisen.

(2) State that no other reason for separation in this manual is considered appropriate and why.

NAVPERSMAN 3630900(3)(a).

This court agrees with the defendant that the required notification procedures were adequately followed. The Assistant Secretary fully adopted the reasoning and all the words in the BCNR minority opinion by his specific endorsement of the minority decision, with the following words written at the bottom of the final page of the BCNR decision: "[a]fter a careful review of this case, I specifically adopt the findings, conclusions, and recommendations of the minority of the Board." The minority recommendation of the BCNR contained detailed explanations and gave plaintiff Crager clear notice that his discharge, although undertaken pursuant to NAVPERSMAN 3630900 and plaintiff's service record, also was related to the summary court-martial conviction for indecent exposure.

In *Miller v. Lehman,* the court wrote:

While the Secretary could have provided a more detailed explanation of his reasoning, we are required to 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' *Bowman Transportation, Inc. v. Arkansas–Best Motor Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). In addition, 'if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference.' *Environmental Defense Fund, Inc. v. EPA,* 465 F.2d 528, 537 (D.C.Cir.1972).

801 F.2d at 497.

In the instant case, like in *Miller v. Lehman,* although the Assistant Secretary could have himself reiterated the reasons why separation was in the best interests of the Navy, the reasons were set forth with sufficient clarity in the minority decision, which was specifically adopted by the Assistant Secretary. The court, therefore, finds that the Secretary fulfilled the notice requirements of NAVPERSMAN 3630900(3)(a).

■ Plaintiff also alleges that because NAVPERSMAN 3630900 could not have been relied on from the outset by the defendant, it should not be relied on later and the separation should be construed as void. However, plaintiff has misinterpreted both the purpose of the regulation as well as the wording contained within it. NAVPERSMAN 3630900 clearly states that discharge is proper "regardless of any limitations on separation provided by this Manual." The entire purpose of this regulation is to provide a means for the military to separate an individual from the service when other means are inappropriate, but the service considers it necessary. The Navy did not have to rely on NAVPERSMAN 3630900 from the outset to make such reliance valid.

Plaintiff further contends that after the BCNR made its conclusions, but before the Secretary rendered a decision, the matter was routed to a uniformed, military JAG lawyer for a recommendation, in violation of 10 U.S.C. § 1552(a), which requires the Secretary to act "through boards of civilians of the executive part of that military department." The JAG lawyer recommended that the Secretary deny Crager the relief sought and that the discharge be upheld. Both parties cite to *Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416 (1969), but offer contrary interpretations of the case.

In *Weiss,* plaintiff applied to the BCNR, which recommended that his records be corrected. Pursuant to direct advice from a uniformed JAG, however, the Under Secretary denied all relief sought. The court granted summary judgment to the plaintiff and found that the Secretary had failed to make a decision acting through a civilian process as required. To explain 10 U.S.C. § 1552, the plaintiff offers the following quote from *Weiss:* "[a]n officer who has the predominant voice the JAG had here is one the Secretary is 'acting through' and if he is uniformed he is one of those the Congress intended should not be 'acted through.'" *Weiss,* 187 Ct.Cl. at 11, 408

F.2d at 421. Plaintiff seems to interpret *Weiss* to stand for a rule that having a uniformed military lawyer on staff, advising the secretarial officer during the decision making process, will almost automatically constitute *per se* legal error. This court, however, does not agree. Moreover, *Weiss* is not, as plaintiff contends, "squarely on point with the facts of the instant case." Unfortunately, plaintiff lifted the quote cited above out of context. In fact, the entire statement in *Weiss* reads:

> To say the JAG advised the action here taken is indeed an understatement. The routing and timing were such that in appearance and effect the JAG was placed in the position of a superior reviewing and revising the work product of a subordinate. The statute requires that the Secretary shall depend at least as much, some might say more, on the judgment of the Board the statute contemplates, as he does on the views of any authority or potentate not mentioned in the statute. An officer who has the predominate voice the JAG had here is one the Secretary is 'acting through' and if he is uniformed he is one of those the Congress intended should not be 'acted through.'

*Weiss*, 187 Ct.Cl. at 11, 408 F.2d at 421.

 Unlike the situation in *Weiss*, in the instant case, there is no evidence that the JAG was the "predominant voice" in the decision making process. Following the *Weiss* reasoning, there is no legal error in the Secretary maintaining a JAG legal officer on his staff, nor in consulting with him, as long as the secretarial officer retains the decision making authority and exercises it. As long as the JAG remains in an advisory capacity, working under the Secretary, and the Secretary is the individual who actually makes the decision, this court will not find a legal error.

The plaintiff also cites to *Proper v. United States*, 139 Ct.Cl. 511, 154 F.Supp. 317 (1957) and *Hertzog v. United States*, 167 Ct.Cl. 377 (1964). In *Proper*, the court found that the findings of the Correction Board in that case were justified by the record, and that, therefore, the Secretary should not rely on the advice of a former military officer and overrule a recommendation of that civilian correction board. In *Hertzog v. United States*, 167 Ct.Cl. at 387, the court held that it could not find that the Secretary's denial of the plaintiff's application, which had been previously approved by the Board, "was not 'arbitrary and capricious'" because the record in the case supported the applicant's request for relief. The critical distinctions between Crager's case, as opposed to the plaintiffs in *Proper* and *Hertzog*, is that, unlike in the present case, the findings of the Board in *Proper* and *Hertzog* were not justified by the record.

In the decision issued by the BCNR to plaintiff Crager, even the majority Board members specifically state that the record, as presented, supports the Secretary's findings, but, nonetheless, they felt moved to grant Crager relief "as a matter of equity and fairness." This court finds that no prejudicial legal error occurred when Assistant Secretary Untermeyer sought the advice of a uniformed officer on his staff during the review of the plaintiff's application for relief. The record here contains justification for and ratification of Assistant Secretary Untermeyer's decision. Furthermore, the JAG officer was acting only as an advisor to the Assistant Secretary during the review of the application.

Last, the plaintiff contends that, because Assistant Secretary Untermeyer was the same individual who originally signed the plaintiff's discharge in the best interests of the service, he should not also be allowed to review the BCNR recommendation and issue the final decision in the case. Plaintiff argues that, in essence, Assistant Secretary Untermeyer was reviewing the validity of his own original decision to discharge.[8] The defendant has responded that Mr. Untermeyer's previous involve-

---

**8.** Given the uncontroverted May 1, 1987 letter to plaintiff Crager from W. Dean Pfeiffer, included in the Administrative Record, which suggests a final decision on review of the BCNR recom-

mendations may, in fact, have been made by the Under Secretary and not by the Assistant Secretary, this argument by the plaintiff may have no factual basis. *See* footnote 5, above.

ment should not disqualify him and that, moreover, there was no bias or prejudice documented in the record.

Citing to the Opinion in *Weiss v. United States*, the plaintiff quotes the following language:

> It seems obvious the Congress deemed it unfair to one such as plaintiff here to have the same officer, who reviewed and approved of the original proceedings to be corrected, review the BCNR proceeding and in effect decide whether he himself was in error. The procedure, if generally followed, would deprive the requirement, that the Secretary act through civilian boards, of all real significance and effect.

187 Ct.Cl. at 12, 408 F.2d at 422.

■ Although in this instance plaintiff has a cogent point to argue, once again, plaintiff has missed the subtle distinction between the cited case, *Weiss*, and the situation presented to this court by the instant case. It is axiomatic that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This concept extends beyond the courts, to administrative agencies and tribunals as well, where bias in a decision maker is to be considered "constitutionally unacceptable." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

The Supreme Court, in *Withrow*, set forth certain scenarios which it felt so raise the probability of bias that these situations are to be deemed constitutionally intolerable. Such scenarios include "those in which the adjudicator has a pecuniary interest in the outcome," and those "in which he has been the target of personal abuse or criticism from the party before him." *Id.* (Citations omitted.) The court in *Withrow*, however, goes on to find that in order to demonstrate bias, one must first "overcome a presumption of honesty and integrity in those serving as adjudicators." *Id.*

■ The plaintiff in this case has provided the court with absolutely no evidence of actual bias on the part of Assistant Secretary Untermeyer or Assistant Secretary Bergquist, nor has plaintiff made such a claim. Moreover, in plaintiff's case, the BCNR specifically found that the decision of Assistant Secretary Untermeyer to discharge plaintiff in the best interests of the service "was effected in accordance with applicable directives and was legally unobjectionable." The BCNR majority, which promoted plaintiff's retention in the military, based its decision on equitable principles, noting that the plaintiff Crager had taken steps to cure an alcohol problem and had demonstrated an acceptable record of service both before and after the incident which led to his conviction for sexual misconduct. Although perhaps not the most gentle, kind, or even humane decision, the decision of the Assistant Secretary to uphold plaintiff Crager's discharge has not been shown to be biased or procedurally defective. Absent such showing, this court should not invade the province of the military and attempt to the Navy's personnel practices.[9]

The final review which occurred in plaintiff's case was a *de novo* review by a previously uninvolved Assistant Secretary, pursuant to the instructions from senior, navy management to review those cases in which the Assistant Secretary had disapproved, or substantially modified, a BCNR decision, after receiving input from a noncivilian. The defendant denies the plaintiff's contention that the March 24, 1989 order of the Secretary of Defense to review plaintiff's case was an admission of legal error. Rather, the defendant argues that regardless of any other possible bias, the *de novo* review of plaintiff's case by Assistant Secretary Bergquist rendered possible, previous procedural errors moot.

As suggested by the defendant, public policy should favor executive branch departments and agencies taking corrective

---

**9.** The court notes that in *Weiss*, the facts upon which the Correction Board based its opinion in favor of the plaintiff were justified in the record and not controverted. Moreover, the *Weiss* court was far more concerned about the role of the JAG as an institution than that of any individual assisting a decision maker. *See Weiss v. United States*, 187 Ct.Cl. at 12, 408 F.2d at 422.

actions *sua sponte.* In *Bookman v. United States,* 197 Ct.Cl. 108, 453 F.2d 1263 (1972), the defendant argued that it is an inherent right of every tribunal to reconsider its own decision. The *Bookman* court stated, "[q]uite consistently, we have held that absent contrary legislative intent or other affirmative evidence, this court will sustain the reconsidered decision of an agency, as long as the administrative action is conducted within a short and reasonable time period." *Id.* at 112–13, 453 F.2d 1263. Although Assistant Secretary Bergquist's *de novo* review was not really conducted within a short time, this court still believes that effective, unbiased *de novo* review of agency action should be promoted, regardless of the time which has lapsed. Moreover, other than a bald suggestion by plaintiff's counsel in procedural motions regarding supplementation of the record, there is nothing in the record to suggest that Assistant Secretary Bergquist was either biased or briefed on the history of this case prior to his review. In light of the rule of *Bookman,* and the fact that Assistant Secretary Bergquist appears to have independently come to the same conclusions as his predecessor, Assistant Secretary Untermeyer, and as did the minority member of the BCNR, this court believes that plaintiff Crager's case did receive an additional, gratuitous and independent review, which operated to substantiate and ratify the decision to discharge plaintiff in the best interests of the service.

## CONCLUSION

Upon consideration of the oral arguments and written submissions offered by the parties, the defendant's Cross–Motion for Summary Judgment is GRANTED, and the plaintiff's Motion for Summary Judgment is DENIED. The court finds that, in plaintiff's case, the procedure of separation and the determinations of the Assistant Secretaries of the Navy were proper and in accordance with applicable statutes and regulations. Plaintiff has not met his burden of proof to demonstrate that the actions of the defendant were arbitrary, capricious, and contrary to law by clear and convincing evidence. The Clerk is directed to enter judgment in accordance with the findings herein.

IT IS SO ORDERED.